ELLIS v. TERRELL.

Opinion delivered June 30, 1913.

1. APPEAL AND ERROR—QUESTION NOT RAISED BELOW.—In an action on a note, where the plaintiff did not challenge the sufficiency of the defendant's answer by demurrer or otherwise, but went to trial as though the issues were properly made, he can not, on appeal, for the first time, raise the question of the sufficiency of the answer. (Page 75.)

2. USURY—USURIOUS CONTRACT.—Under Kirby's Digest, § 5389, Mansfields' Digest, § 4732, a contract is usurious whereby a borrower in 1906, received $160, for which he promised to pay $200 in five years, with interest thereon at 6 per cent from the date of the loan. (Page 75.)

3. USURY—USURIOUS CONTRACT.—A contract is usurious whereby interest at the highest rate permitted by the statute is deducted at the time of making the loan if the loan is for a period of over twelve months. See Kirby's Digest, § 5382. (Page 76.)

4. JUDICIAL NOTICE—LAWS OF OTHER STATES.—Under Kirby's Digest, § 7823, the Supreme Court must take judicial notice of the laws of other states. (Page 77.)

Appeal from Polk Chancery Court; *James D. Shaver,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This suit was instituted by the appellant against the appellee to recover judgment on a promissory note of $200, which appellant alleged was executed by the appellee to appellant on the 1st day of December, 1906. The note was made payable on the 1st day of December, 1911. It bore interest at the rate of 6 per cent per annum from date, and, in order to arrange the payment of interest to the time of maturity, appellee executed five interest coupon notes in favor of the appellant in the sum of $12 each. Appellant alleged that all of the interest coupon notes except the last one had been paid, and that the last coupon note, which was due and payable December 1, 1911, was past due and unpaid; that the coupon notes bore interest after maturity at the rate of 10 per cent per annum, and that the principal note of $200 bore interest at the rate of 6 per cent from date. Appellant alleged that both the interest coupon note and the principal note of $200 were unpaid. He alleged that the note was secured by a mortgage on certain real estate, and prayed for judgment on the notes, and that the mortgage be foreclosed, etc.

The appellee answered, admitting that he executed the notes and mortgage, as alleged in the complaint. Averred that he only received the sum of $152 in all, towit: The sum of $50 in January, 1906, at the time the note was executed, and in March following $50, and in June following the sum of $52; that in June, 1907, after the loan had been made, and after repeated efforts on the part of appellee to get the balance due him from appellant, appellant sent its agent to appellee, at which time the $52 above mentioned was paid to appellee, appellant claiming that that was all that appellant could pay and that the balance of $7.50 was the amount the appel-

lant had to pay its agent for his services in making the loan. Appellee alleged that the contract and loan were usurious and known to be usurious by appellant at the time the note and mortgage were executed. Appellee prayed that the notes and mortgage be declared void and that the same be cancelled as a cloud on appellee's title to the land, and he prayed for judgment against the appellant in the sum of $48, and for such other relief as seemed equitable and just.

The appellant, in his own behalf, testified that he owned the note for $200 and the interest note for $12, bearing interest at 10 per cent per annum after date, both secured by the mortgage. He stated that the making of the loan was first suggested to him by the Jefferson Trust Company, which company stated that it was not authorized to make loans in Arkansas. The loan did not come to appellant through Mears, and Mears was not appellant's agent. If Mears charged a commission appellant was not aware of it. Appellant did not receive any commission and did not participate in what Mears received, if he received any. Appellant states that he paid the $200 to appellee through the Jefferson Trust Company. He did not receive any part of the $200 back. He had no agent in the matter other than to turn the money over to the Jefferson Trust Company to send to the appellee. When appellant paid the money over to the agent of the appellee appellant intended to charge only 10 per cent for this loan, and charged no more. Appellant's directions to the Jefferson Trust Company were to forward the money to the borrower. The contract expressed in the notes and mortgage is the contract made and intended.

Appellee testified that he contracted for the loan with one A. Mears, representing himself to be the agent of the Jefferson Trust Company, of South McAlister, Indian Territory. He agreed to make appellee a loan on his place of $200 at 10 per cent interest per annum. Appellee received only $161.10. He gave his note for $200, due in five years, with interest after maturity. In addi-

tion to this, appellee gave five coupon notes for $12 each, payable annually, without interest until after maturity of each note. Appellee paid four of these coupon notes

An authorization of E. Ashley Mears as appellee's agent was signed by appellee in July, 1907, but appellee at no time considered Mears his agent. The application appellee made was to the Jefferson Trust Company on the blanks furnished Mr. Mears by the company. The application appellee signed authorizing Mears to procure the loan was as follows: "I authorize E. Ashley Mears to procure a loan on my farm in Polk County, Arkansas, for $200, five years at 6 per cent, and promise to pay him a commission of $7.50 for his services procuring said loan."

Appellee also signed the application October 12, 1906, addressed to the Jefferson Trust Company, which, among other things, stated: "I hereby appoint and constitute the Jefferson Trust Company, of South McAlister, I. T., my agent or attorney in fact to negotiate and procure for me the loan hereby applied for, authorizing my said attorney to pay off all liens on said land and to send money or drafts therefor at my risk, and I hereby ratify and confirm all my said agent or attorney may do in the premises."

The note sued on was as follows:

"South McAlister, I. T.

"On the 1st day of December, 1911, I promise to pay to the order of Edward S. Ellis the principal sum of $200 with interest thereon at the rate of 6 per cent per annum from December 1, 1906, until maturity, payable annually, according to the tenor of five interest notes, being for $12 each, all of even date herewith, both principal and interest notes payable in gold coin, at the office of the Jefferson Trust Company, South McAlister, I. T.," with a clause making the whole amount due in case of failure to pay interest when the same became due, all sums to bear 10 per cent interest after maturity until paid, payable annually whenever the same became due according to the terms thereof, or by reason of the failure to pay

principal or interest.   The note was dated December 1, 1906.   The coupon notes were dated December 1, 1906, and read as follows (except as to the date when due) : "On the 1st day of December, 1911, for value received, I promise to pay to the order of Edward S. Ellis, or bearer, $12, in gold coin, at the office of the Jefferson Trust Company, South McAlister, I. T., being interest due on my principal note of $200 of even date herewith. This note bears interest at 10 per cent per year after due until paid."

The check for $160, payable to the order of Wm. T. Terrell and E. A. Mears, and signed by the Jefferson Trust Company, dated December 1, 1906, was introduced in evidence.   It bore the endorsement, "Pay First National Bank or order," (signed) "E. A. Mears, Wm. T. Terrell," and shows to have been paid December 11, 1906.

Several letters were introduced by the appellee, received by him from the Jefferson Trust Company, signed "Jefferson Trust Company, by E. S. Ellis, Secretary." In one of these letters appears the following: "We thought you understood that you were to receive $160 net, our mortgage being written at 6 per cent interest instead of 10 per cent interest, the rate you were to pay. This $40 deducted being on 4 per cent of the interest for five years.   If you prefer to give commission notes for this $40 payable in one and two years and secure same by second mortgage on the same property, we are willing to do it, and, on your request through Mr. Mears, we will give the matter our prompt attention."

There are still other letters notifying appellee that his mortgage was due and urging payment thereof or arrangement for extension.   In a letter December 20, 1911, the Jefferson Trust Company wrote appellee, in which it stated, among other things, "We do not know why you object to paying $25 for renewal of your loan for five years, when you paid $40 the other time, or when we made you loan, we thought we were making you a very fair proposition.   You must think we are in busi-

ness for our health if you think we wish to renew the loan at 6 per cent.''

The court, among other things, found as follows: ''That the defendant set up the defense of usury, in that, at the time the contract was made the defendant gave his original note for $200, due in five years, and bearing 6 per cent interest from date, and that instead of getting the $200 he only received $160; and also gave his notes for the interest, payable annually, with these coupon or interest notes, bearing 10 per cent interest after due. At the time of this contract the court finds that plaintiff deducted and kept out $40, representing 4 per cent on the $200 for the five years.''

The court found that the contract was usurious and void, and that the mortgage and notes should be cancelled, and entered a decree to that effect, and dismissed appellant's complaint for want of equity.

*J. I. Alley,* for appellant.

1. No usury is alleged nor proven. To constitute usury there must be at the time of making the contract an intention to charge an unlawful rate of interest (Kirby's Digest, § § 5389, 5390; 91 Ark. 461), and such unlawful interest must be actually taken or reserved. 54 Ark. 566; 83 *Id.* 35.

2. It is not usury to take the highest legal interest in advance from the loan for one year (60 Ark. 288), nor on paper running from twenty-three months to five years. 8 Wh. 338; 34 Ind. 116; 110 Ill. 235; 60 Ark. 288.

3. If the deduction was made by an agent of defendant it is not usury. 51 Ark. 535.

4. This is an Indian Territory contract. There is no presumption that the laws are the same as in Arkansas. 66 Ark. 77; 46 *Id.* 50.

*W. Prickett,* for appellee.

1. The plaintiff did not raise the issue in the lower court that the answer did not tender the issue of usury; he can not now object to the sufficiency of the answer. 71 Ark. 242; 72 *Id.* 47; 75 *Id.* 312; 106 Ark. 525.

2.  Kirby's Dig., § § 5389-90, make the contract usurious and void.  60 Ark. 289.

3.  This court takes judicial notice of the usury laws of the Indian Territory.  Const. U. S., art. 6; 67 Ark. 302; Kirby's Dig., § 7823.

Wood, J., (after stating the facts).  Appellant contends that appellee did not set up in his answer a sufficient defense or plea of usury, but appellant did not challenge the sufficiency of the answer in the court below by demurrer or otherwise.  He went to trial as if the issue were properly made, and we must so treat it here.  The testimony was adduced on that issue, and appellant will not be heard here for the first time to raise the question that the answer was not sufficient.

The evidence was sufficient, in fact practically undisputed, to sustain the finding of the court to the effect that appellee executed his original note for $200 due in five years, bearing 6 per cent interest from date, and that he only received from the appellant, the payee of the note, the sum of $151.10, or, at most, the sum of $160, conceding that Mears was the agent of appellee.  Appellee gave coupon interest notes payable annually, bearing 10 per cent interest after due.  It thus appears that the appellant deducted at the time of the execution of the note sued on the sum of $40, or 4 per cent on the principal note of $200 for the period of five years.

Section 5389 of Kirby's Digest provides that, "All contracts for a greater rate of interest than 10 per centum per annum shall be void as to principal and interest."  Art. 19, § 13, Const. of Ark.

Appellant and appellee, under the above statute and Constitution, were forbidden to contract for a rate of interest whereby more than 10 per cent per annum would be paid.  As appellee only received a loan of $160, at the highest rate of interest for the full period of five years he should have paid, including principal and interest, the sum of $240.  But, under the contract, as expressed in the note and shown in the evidence of appellee and the correspondence, appellee was compelled to pay

the principal note of $200 and five coupon notes of $12 each, making a total of $260, or $20 more than the legal rate. This is clearly usurious, unless appellant, under the law, could deduct the 4 per cent interest on the principal note of $200 for the full period of five years.

Our statute, Kirby's Digest, § 5382, provides that: "It shall be lawful for all persons loaning money in this State to receive or discount interest upon any commercial paper for a period not exceding twelve months, at any rate of interest agreed upon by the parties, not to exceed 10 per centum per annum." This statute was passed April 20, 1895, at the session of the Legislature following the decision of this court in *Bank of Newport v. Cook,* 60 Ark. 289, wherein we held that the taking of the highest rate of interest in advance on negotiable paper having twelve months to run is not usury. In that case the court had before it a negotiable note having only twelve months to run. The statute then in force only limited the right to discount commercial paper, but did not fix any limit as to time. The court having one year paper before it, only decided that there was authority for discounting such paper, but, of course, did not determine that the discounting of commercial paper for a longer period than one year was inhibited. Then, it being left open by the decision of the court, the Legislature following limited the time for discounting commercial paper to a period not exceeding twelve months. The Legislature having made it lawful to discount commercial paper for a period of twelve months, must have intended to prohibit the discounting of commercial paper having a longer time to run under the doctrine of *expressio unius est exclusio alterius.* This statute shows the legislative policy as to the subject of usury in this State. But even if there were no statute upon the subject, this court would not extend the doctrine announced in *Bank of Newport* v. *Cook, supra,* to commercial paper having a longer time to run than twelve months, for we are of the opinion that such time is as long as such paper should be allowed to be discounted under the trend of

our own decisions and the weight of authority in other jurisdictions.

Mr. Parsons, in his work on Contracts, says: "There seems to be a strong disposition to limit this practice to short paper, or at least not to apply it to long loans or discounts." 3 Parsons on Contracts, No. 131, quoted by Mr. Justice BATTLE in his dissenting opinion in *Bank of Newport* v. *Cook, supra.*

If it be conceded that the note in suit was an Indian Territory contract, still the laws of the Indian Territory at the time the note was executed were the same on the subject of usury as our law on that subject. Chapter 109, Mansfield's Digest of the Arkansas Statutes, was extended over the Indian Territory by act of Congress of May 2, 1890, and section 4732, chapter 109, Mansfield's Digest, provides: "All contracts for a greater rate of interest than 10 per centum per annum shall be void as to principal and interest." *Sulphur Bank & Trust Co.* v. *Medlock et al.,* 25 Okla. Rep. 73. See also *Brewer et al.* v. *Rust,* 20 Okla. 776.

This court must take judicial knowledge of the laws of other States. Kirby's Dig., § 7823. See, also, *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 67 Ark. 302; *St. Louis, I. M. & S. Ry. Co.* v. *Cleere,* 76 Ark. 377.

The judgment is therefore affirmed.