**HUDDLESTON et al. v. TEXAS PIPE LINE CO.** (No. 9472.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 26, 1921. Rehearing Denied April 2, 1921.)

1. Judgment ☞443(2) — Judgment enjoined for fraud of plaintiff's attorney in breaching promise to notify defendant's counsel when case was called.

Where plaintiff's counsel promised to advise defendant's attorney when a case was to be set, but failed and obtained judgment, such judgment may be vacated and enforcement enjoined on the ground of fraud; the ordinary rule that breach of a promise does not entitle the opposite party to treat the one at fault as guilty of fraud not applying.

2. Master and servant ☞393½ — Employer may become liable to physician treating compensable injury.

Under the Employers' Liability Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), as amended by Acts 1917, c. 103 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), an employer, though a member of the Texas Employers' Insurance Association, who engages a physician for an injured employé, may become liable for the physician's compensation.

3. Master and servant ☞409½, New, vol. 7A Key-No. Series—Employment of physician treating compensable injury held for jury.

In an action to enjoin a judgment obtained by a physician against an employer, *held,* that the question whether the physician was informed that he must look to the Texas Employers' Insurance Association, and not to the employer, should have been submitted to the jury.

4. Master and servant ☞404—Evidence admissible on issue of employment of physician treating compensable injury.

In a suit to enjoin enforcement of a judgment recovered by a physician against an employer which was member of the Texas Employers' Insurance Association, the policy of insurance and proof of injury should not be admitted, but proof should be restricted to the fact that the employer was a member of the association.

Buck, J., dissenting in part.

On Motion for Rehearing.

5. Judgment ☞454—Trial ☞374(2)—Suit for new trial is equitable proceeding, and verdict not conclusive.

An independent suit for a new trial to cancel a judgment and enjoin enforcement is an equitable proceeding, and answers of the jury as to issues submitted are merely persuasive, and not binding.

6. Judgment ☞461(4)—On suit to cancel judgment prima facie showing of meritorious defense is sufficient.

In suit to cancel a judgment and enjoin enforcement, a prima facie showing of a meritorious defense is sufficient.

Buck, J., dissenting.

Appeal from Tarrant County Court; W. P. Walker, Judge.

Action by the Texas Pipe Line Company against Dr. W. C. Huddleston and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Ocie Speer and J. W. Estes, both of Fort Worth, for appellants.

Lawther & Pope, of Dallas, and McLean, Scott & McLean, of Fort Worth, for appellee.

BUCK, J. This suit was instituted in the county court of Tarrant county for civil cases by the Texas Pipe Line company against Dr. W. C. Huddleston and Sheriff Sterling P. Clark, to vacate a judgment rendered in the same court in cause No. 16684, in which Dr. Huddleston was plaintiff and the Texas Pipe Line Company defendant, and in which a judgment was rendered for plaintiff on July 10, 1919. The plaintiff in the instant suit prayed for an injunction restraining defendant from enforcing said judgment. The grounds upon which plaintiff sought to vacate the judgment in cause No. 16684 was that Dr. Huddleston's attorney, J. W. Estes, had promised the attorney of the Texas Pipe Line Company to notify him of the setting of the case, and that the cause was set in the county court and judgment rendered without any notice to the attorney of the Texas Pipe Line Company, and contrary to an agreement between counsel for the respective parties.

The cause was submitted to a jury upon special issues, and judgment was entered thereon in favor of the plaintiff, appellee here, vacating the judgment of July 10, 1919, and making permanent the injunction theretofore issued.

The jury found the following facts:

(1) That J. W. Estes, attorney for Dr. W. C. Huddleston, prior to July 10, 1919, advised Harry P. Lawther, attorney for the Texas Pipe Line Company, that he (Estes) would keep Lawther advised as to the setting of the case of Huddleston v. Texas Pipe Line Company in the county civil court of Tarrant county, and that he (Estes) would notify Lawther at Dallas of any setting of the case in the county court in time for the said Lawther to secure his witnesses and be present at the trial.

(2) That Lawther believed and relied upon such representations by Estes.

(3) That Lawther did not know of the setting of the case for July 10, 1919, at any time prior to his being advised of an execution having been issued on the judgment taken.

(4) That Lawther abstained from taking other means of informing himself as to the setting of said cause by reason of the reliance on the promise made by Estes.

(5) That Estes did not on June 30, 1919,

direct and have written and direct to be mailed a letter advising Lawther of the setting of the case for July 10, 1919.

(6) That Lawther exercised ordinary care to look after and keep informed with reference to the setting of the case of Huddleston v. Texas Pipe Line Company.

[1] Appellants' first assignment of error is that the court erred in overruling defendant's special exception, as follows:

"Specially excepting to plaintiffs' first amended original petition, these defendants say the same is insufficient in this, that said petition shows that any and all statements, representations, or promises made by counsel for defendant W. C. Huddleston, in cause No. 16684, against Texas Pipe Line Company, were promises with respect to things to be done in the future, and as such could not be fraudulent so as to form the basis of an action, and said petition contains no allegation that said promises were at the time deceitfully made, and that said counsel did not at the time intend to keep and perform the same, and of this exception they pray the judgment of the court."

That a promise made in good faith to do or not to do a thing in the future, even though such promise be not kept, cannot form the basis for an action for fraud, is thoroughly well settled in the authorities. The only question is whether or not such principle is applicable to a proceeding like this. In Sperry v. Sperry, 103 S. W. 419, by the Dallas Court of Civil Appeals, in an opinion by Judge Bookhout, the following is said:

"Appellant alleges, in substance, that she was prevented from attending the trial of the divorce suit because appellee promised her that, if she would stay away, he would withdraw the charge of adultery contained in his petition filed in said suit; that he would not ask for the custody of their minor child, but would leave the child with appellant's mother permanently, so that she might see the child at any time; that he would deed to her her interest in the land they owned, and give to her her part of the personal property; that she believed and relied upon his promises, and was misled and deceived thereby, and but for them she would have asserted her rights in the divorce suit. These allegations relate to things to be performed by the appellee in the future, and it has been held that a promise to perform some act in the future, although made by one party as a representation to induce the other to enter into a contract, will not amount to fraud in legal contemplation. Bigham v. Bigham, 57 Tex. 238. We think this principle is applicable to the promises made by plaintiff in the divorce suit to defendant therein. It is not charged that these promises were made with a design to cheat and deceive appellant, and that appellee had no intention at the time of keeping or performing them."

In 1 Bigelow on Frauds, p. 483, § 4, it is said:

"The general rule in regard to promises is that they are without the domain of law unless they create a contract, and that, when they create a contract, a breach gives to the injured party simply a right of action for damages, and not a right to treat the other party as guilty of fraud. But that proceeds upon the ground that to fail to perform a promise is no indication that there was fraud in the transaction. There may however have been fraud in it; and this fraud may have consisted in making the promise with intent not to perform it. To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and of fraud as could be made. A promise is a solemn affirmation of intention as a present fact."

In Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, an interesting discussion is given of this question. In that case no exception was interposed as to the sufficiency of the allegations as formal averments of fraud, and of the fact constituting the same. See, also, McFarland v. McGill, 16 Tex. Civ. App. 298, 41 S. W. 402; Jones Lumber Co. v. Villegas, 8 Tex. Civ. App. 669, 28 S. W. 558; N. Y. Life Ins. Co. v. Miller, 11 Tex. Civ. App. 536, 32 S. W. 550; 12 R. C. L. p. 486, § 183.

But the majority conclude that the strict equity rule, as to the sufficiency of the pleading in order to warrant relief from a contract induced by false promises, should not apply in a case like this, which deals with a matter of procedure. In the case of Hickman v. Swain, 210 S. W. 548, this court reversed a judgment of the trial court denying to plaintiff relief from a judgment obtained at a former term of the court, and said:

"The motion to vacate the order of dismissal is in the nature of a bill in equity, and, as said by our Supreme Court in the case of Brownson v. Reynolds, 77 Tex. 256, 13 S. W. 986, which was likewise a suit to set aside a judgment rendered at a former term of court: 'It is also a fixed rule that a court of equity will not interfere to set aside a judgment and grant a new trial except upon a showing of strict diligence in the presentation of the cause, and upon proof that after doing all that such diligence required to be done he had been deprived by fraud, accident, mistake, or other uncontrollable circumstance of the opportunity of properly presenting his case upon the trial.' And in the course of the same opinion the court quoted with approval the following from Vardeman v. Edwards, 21 Tex. 737:' In general, where it would have been proper for a court of law to have granted a new trial, if the application had been made while the court had the power to do so, the court of chancery will afford its aid and grant it, if the application be made upon grounds arising after the court of law ceased to have power to act. * * * And, in general, the court will be governed by the same principles in passing upon the merits of the application by which the court of law would have been governed.' * * * In the absence of any finding by the trial judge that the mistake made by plaintiff's counsel in believing that the regular term of court convened in September,

rather than in August, 1916, was due to his negligence, and in view of the uncontradicted proof offered explaining how the mistake occurred, and the further proof of diligence on his part in the preparation of his case for trial, and of a meritorious cause of action, we are of the opinion that the trial court erred in his refusal to set aside and vacate the order of dismissal theretofore entered"—citing cases.

Quoting further from Vardeman v. Edwards, supra:

"The application, whether made before or after the term, is addressed to the same court, having cognizance of both legal and equitable causes; and there can be no reason why it should not be governed by precisely the same principles in the one case as the other, only with this qualification, that, as the rule of law requires that the application be made during the term at which the verdict is rendered, if this be not done, the party must show an equitable excuse to entitle him to a hearing of his application after the term."

The announcement of this rule in Vardeman v. Edwards was quoted with approval in Bryorly v. Clark, 48 Tex. 345.

The majority conclude that the appellants' first assignment should be overruled. 15 R. C. L., pp. 704, 707.

The writer does not concur with the views of the majority heretofore expressed, and can see no reason why the rule of equity in regard to promises concerning things to be performed in the future should not apply, as held in Sperry v. Sperry, supra.

[2, 3] One of the defenses which plaintiff below claimed it had against the original suit was that the plaintiff was a member of the Texas Employers' Insurance Association, and it was not liable for the doctor's bill incurred while Dr. Huddleston was treating one of its employés at the request of the engineer in charge of its drilling operations near the town of Newark. We see nothing in the Employers' Liability Act (chapter 5, tit. 77, arts. 5246h–5246zzzz, V. S. Tex. Civ. Stats.), amended by Acts 1917, p. 269 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), to take away from an employer the right and liberty to employ a physician in the treatment of an injured employé. It is true that article 5246—3, in the 1918 Supplement, provides that the employé has no right of action against the employer for damages for personal injuries, and such damages would include the item of medical attention, but the plaintiff in the original suit against the Pipe Line Company was the attending physician, who, by this article, would not be precluded from recovering for medical services rendered at the request of the employer. We think that the defendant's tendered issue No. 2, should have been submitted to the jury, which is as follows:

"Did E. R. Patton, at the time he called Dr. W. C. Huddleston to attend the employé Pol-

lard, inform Dr. Huddleston that the Texas Pipe Line Company would not be responsible for the fees, or charges, for his services, but that the insurance company or association would pay and be responsible for the same."

The evidence shows that Patton, the engineer in charge, had full authority to call in a physician in case any of the employés were injured, but there was evidence by the Pipe Line Company to the effect that he was to inform such physician that the Texas Employers' Insurance Association would pay the bill, and not the Pipe Line Company. Dr. Huddleston testified that Patton did not make such a statement to him, while Patton testified that he did. However, if the jury had answered this interrogatory in the negative, such answer would not have had controlling effect on the judgment. This interrogatory bore upon the major question of whether plaintiff below had a meritorious defense or not to original action in cause No. 16684. The evidence upon this issue was conflicting, and no direct interrogatory upon this issue was submitted to the jury, nor is any assignment directed to the failure to submit such. Hence, this question not having been determined by the jury, the failure to submit an evidential issue to the jury becomes immaterial.

[4] We believe that the introduction of the policy of insurance and the proofs of injury unnecessarily incumbered the record. The only evidence that was admissible under this head, as we view it, was that the Pipe Line Company was a subscriber to and had an insurance policy with the Texas Employers' Insurance Association. But we do not deem such introduction reversible error.

In Producers' Oil Co. v. Green, 212 S. W. 68, cited by appellee, decided by the Galveston Court of Civil Appeals, the court held that the employé who called in a physician to treat another employé who was injured was not authorized by the employer to make the arrangement with the physician; and the majority of the court decided that, even though the oil company, the employer, had delegated to the employé all the authority to employ a physician possessed by the corporation, the corporation would not be bound by such a contract, for the reason that the company had previously provided a method of caring for such contingencies by means of the insurance it had taken out for the benefit of its employés under the Compensation Act, and not even one of its officers could substitute a different provision, or impose a liability on account of services rendered an employé, particularly in the absence of special authority from the board of directors. The minority member of the court, while agreeing with the judgment generally, thought that in the contingency shown the facts of the case would have brought it within the operation of the principle applied in instances

of emergency, and so would have rendered the corporation liable for its general superintendent's acts. Texas B. Co. v. Albert, 57 Tex. Civ. App. 638, 123 S. W. 716; Perkins v. Kilpatrick (Mo. App.) 193 S. W. 876; Gray v. Lumpkin, 159 S. W. 880.

We do not agree with the conclusion reached by the majority in the cited case, and conclude that such expressions were in the way of obiter dicta.

For the reason given, the judgment below will be affirmed. By affirming the judgment below we do not mean to preclude the plaintiff in cause No. 16684 from trying his cause of action again in the proper court.

BUCK, J., dissenting in part.

### On Motion for Rehearing.

BUCK, J. [5, 6] In appellant's motion for rehearing, he calls our attention to an error in the original opinion. It seems that he did have an assignment directed to the failure of the trial court to submit the issue of whether or not the plaintiff in this suit had a meritorious defense to defendant's cause of action set up in cause No. 16684. But this issue, even if answered in the negative, was not controlling or binding upon the conscience of the trial court. The majority conclude that an independent suit for a new trial is an equitable proceeding, and that in case a jury should be had the answers of the jury to the special issue submitted are merely persuasive, and not binding upon the court, and no more was required than to make a prima facie showing of a meritorious defense. Davis v. Terry, 33 Tex. 426. They believe that such prima facie showing was made in the instant case.

The motion for rehearing is accordingly overruled.

BUCK, J., dissenting.

---

⏇For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes