## CARRIGAN *v.* NICHOLS.

### Opinion delivered April 25, 1921.

1. INSURANCE—DELAY IN RETURNING POLICY FOR MISREPRESENTATIONS. —In an action on a note for a premium under a life insurance policy, where defendant claimed that he was induced to apply for the policy by false representations of the insurer's agent, and that he had returned it immediately upon discovering the falsity of such representations, where it appeared that defendant had delayed for more than three months after receiving the policy before returning it, he will be held as matter of law to have accepted it, and to be precluded from disputing his liability for the premium.

2. APPEAL AND ERROR—PREJUDICIAL ERROR—INSTRUCTION.—Where several defenses were interposed in an action on a note, one of which defenses was improperly submitted to the jury, a judgment for defendant based on a general verdict will be reversed; there being no means of ascertaining what feature of the case controlled the jury in its findings.

Appeal from Grant Circuit Court; *W. H. Evans,* Judge; reversed.

*E. H. Vance, Jr.,* and *Andrew I. Rowland,* for appellants.

1. Under the law as announced in 88 Ark. 284, it was the duty of the insured to examine the policy and reject it, if he did not want it, and return it without unreasonable delay. Failing to do this, he is deemed to have accepted it. Under the evidence here, it was error for the court to modify appellants' instruction No. 4 so as to leave it to the jury to say whether or not he had accepted the policy. 102 Ark. 150.

2. Instruction No. 6 for appellee is misleading and prejudicial and conflicts with other instructions given by the court. It is error to give conflicting instructions. 83 Ark. 202; 93 *Id.* 152; *Ib.* 78; 123 Ark. 600; 128 *Id.* 341; 99 *Id.* 383. See, also, 95 Ark. 506; 88 *Id.* 556. Under the law and the evidence, the delay was unreasonable.

*D. E. Waddell, Isaac McClellan* and *J. S. Utley,* for appellee.

1. The appellee signed the note in controversy as the evidence shows.

2. Appellants were not guilty of such fraudulent misrepresentations as to relieve appellee from payment. The jury found for Nichols, and as the evidence was conflicting the verdict must stand. 138 Ark. 613; *Ib.* 1; 218 S. W. 375; 137 *Id.* 341; 135 *Id.* 499; 134 *Id.* 300; 203 S. W. 271.

3. Under all the evidence the jury found that Nichols did not sign the note and also that appellants were guilty of fraudulent representations that relieved Nich-

ols from payment and the instructions were not conflicting.

McCULLOCH, C. J. This is an action at law to recover the amount of a promissory note alleged to have been executed by appellee to cover the premium on a life insurance policy. Appellant T. D. Carrigan was the soliciting agent of the Bankers' Reserve Life Company of Omaha, Neb., a life insurance company, and he, in connection with his coappellant, A. C. Kennedy, solicited and obtained from appellee an application for a policy of life insurance on appellee's life in the sum of ten thousand dollars. The premium on the policy was $326.10 and the note sued on is alleged to have been executed by appellee to appellants for the amount of said premium. Appellee denies that he signed the note, and that is one of the issues in the case.

The application was forwarded to the company by appellants, and the policy was duly issued and delivered to appellee, who subsequently returned it to the company and refused to receive the policy again or to pay the note. Appellants were entitled to a portion of the first premium as commission for soliciting the insurance, and they paid to the company the amount of the premium to which it was entitled.

Appellee defends the action on the ground, in addition to the one before stated, that he had not signed the note, that appellants falsely represented to him the terms of the policy, and that within a reasonable time after the delivery of the policy to him he discovered the falsity of said representations and immediately returned the policy to the company, refusing to accept it. On the trial of the case each of the appellants testified that appellee signed the note, but the latter testified that he did not sign it. According to the testimony of appellants, there were no misrepresentations concerning the contents of the policy. They testified that the policy was mailed to appellant Kennedy the latter part of August, 1919, and was immediately delivered by Kennedy to appellee, who

accepted it without protest. Kennedy testified that he had several conversations with appellee in regard to the payment of the note, and that appellee made no objections to the policy until some time in February, 1920. Appellee testified that Carrigan represented to him, at the time the application was given, that the policy would contain a provision allowing an immediate cash surrender value "which would make the policy good as collateral security for a loan at any bank," and also that the policy contained a provision for an immediate payment on total disability, and that the loss of an arm, or a leg or an eye would constitute total disability under the terms of the policy. He testified, on his examination in chief, that the policy was sent to him by mail from the home office of the company at Omaha, Nebraska, some time during the month of October, 1919, and that he kept the policy two or three weeks before returning it, which he did by sending through the mail to the home office. He stated that he consulted a banker who told him that the policy was "not worth any more than a blank piece of paper." On cross-examination, however, counsel for appellants produced an original letter of appellee in which he returned the policy to the company. Appellee identified the letter and admitted that he wrote it or caused it to be written. This letter was dated January 22, 1920. Appellee made no attempt to explain the discrepancy between his original testimony in which he stated that the policy was returned in two or three weeks after he received it in October and the contents of this letter which shows that he did not return it until January 22, 1920. The effect of his testimony on cross-examination was to concede that he was mistaken about the time when he returned the policy. According to this view of his testimony, he retained the policy from the time he received it in October until January 22, 1920, a period of more than three months. This, we think, constituted an unreasonable length of time, and he must be deemed to have accepted the policy, which specified on its face the conditions upon which payment would be

made in case of disability, and also contained a statement in detail as to the loan and cash surrender values of the policy from year to year.

It was the duty of appellee to examine the policy within a reasonable time, and his failure to do so must, as before stated, be treated as an acceptance, which precludes him from disputing his liability for the premium. *Griffin* v. *Remmel,* 81 Ark. 269; *Smith* v. *Smith,* 86 Ark. 284. Under some circumstances, it would be a question of fact for the decision of the jury as to what constituted a reasonable time in which to examine a policy and return it if found unsatisfactory, but here we have a case, according to the undisputed proof, where the policy was retained more than three months, and we hold that that constituted, as a matter of law, an unreasonable delay. The court submitted to the jury whether or not the policy was examined and returned within a reasonable time, but we think that under the undisputed evidence, the period of delay being unreasonable, the issue should not have been submitted to the jury.

There was sufficient evidence on the other issue as to whether or not appellee signed the note to justify a submission of it to the jury. We have no means of ascertaining what feature of the case controlled the jury in its findings, so the error in submitting the issue as to the misrepresentations is prejudicial and calls for a reversal of the judgment. The judgment is, therefore, reversed and the cause remanded for a new trial.