Cornelia E. NOSSAMAN, Plaintiff in Error,

v.

The NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, a Foreign Corporation, Incorporated Under the Laws of the State of Minnesota, Defendant in Error.

No. 39999.

Supreme Court of Oklahoma.

Nov. 20, 1962.

Rehearing Denied Dec. 11, 1962.

Armstrong, Burns & Baumert, by L. Enloe Baumert, Ponca City, for plaintiff in error.

C. D. Northcutt, Northcutt & Northcutt, Ponca City, for defendant in error.

JOHNSON, Justice.

Plaintiff in error, hereinafter referred to as plaintiff, filed her petition in the District Court of Kay County, Oklahoma, seeking recovery on a policy of insurance on the life of her son. She was the named beneficiary in said policy.

It was alleged that on May 20, 1958, Neal L. Nossaman received from the defendant an insurance policy on his life for $3,029.00; that said policy was in full force on March 28, 1960, when the insured died. The petition further alleged the refusal of the de-

fendant to pay plaintiff as the beneficiary of said policy, and that she was entitled to judgment thereon. A copy of such policy was attached to the petition.

In its answer the defendant admitted the allegations of residence, the date of the delivery of the insurance policy, the payment of the premiums and the death of insured. It denied all else and affirmatively alleged that there was an aviation exclusion rider set out in the policy; that the insured was killed in a plane crash, and that plaintiff's claim was within such exclusion rider.

Plaintiff filed a general denial by way of reply.

At pre-trial conference it was stipulated:

1. That the capacity of parties was as alleged in the petition.

2. That the policy was issued as alleged and premiums paid.

3. That insured died as a result of the crash of an airplane which he was piloting, and proof of death was duly made to defendant.

It was further stipulated that the policy and other exhibits might be introduced without identification.

The following stipulations were also made:

"Plaintiff's Exhibit '1' is marked for identification. It is stipulated that plaintiff's Exhibit '1' may be received in evidence at the time of trial without additional identification. Defendant requests said stipulation to be with the further understanding that the aviation exclusion rider form was attached to the policy at the time of the delivery. And with the further understanding that the exclusion rider does not contain the signature of the insured, neither does the defendant's copy. It is so stipulated."

The undisputed evidence in this case established the following facts:

1. That the policy was dated May 20, 1958.

2. That the insured was killed March 28, 1960.

3. That all of the premiums over this period of approximately a year and ten months had been paid in full.

4. That during all of this period of time there had been no complaint from the insured that the policy did not represent what he had applied for, although he had possession of the policy.

5. That the attached "aviation exclusion rider" was twice called to insured's attention by letters subsequent to the delivery of the policy.

6. That his application for insurance was made a part of the policy by reference, and a copy was attached to the policy. This application contained the following:

"15. Do you wish full coverage for aviation with an extra premium, if required? No.

\* \* \* \* \* \*

"Special Requests: This man would like to allot his deposits from government check. Aviation rider exclusion desired."

Such application was signed by insured.

7. That the delivered policy had attached thereto the following "aviation exclusion rider":

"LIMITATION OF LIABILITY

"The Company's liability under this policy shall be limited as provided in section hereof headed 'Death Benefit' if the death of the Insured occurs as a result of travel or flight in, or descent from or with, any kind of aircraft if the Insured (1) is a pilot, officer or member of the crew of such aircraft, or is participating in aeronautic or aviation training during such flight, or (2) is in the military, naval or air forces of any country and is being transported in a military, naval or air force aircraft and has any duties whatsoever aboard such aircraft while in flight."

8. That the insured was killed while piloting a naval plane.

9. Full tender of the premiums paid was made by the company.

# 624

The contentions of plaintiff are:

"I.   The insurance contract prepared and issued by the defendant company was ambiguous and susceptible of two interpretations and therefore raised mixed questions of law and fact; and the trial court erred in not submitting the question of intention of the parties to the jury.

"II.   The plaintiff had sustained her burden of proving the insurance contract and her right to recover the face value thereunder, and the burden had shifted to the defendant insurance company to show that the insured's death was within an effective and valid excluded risk in said contract; therefore, the trial court erred in sustaining the defendant's demurrer to the plaintiff's evidence.

"III.   Assuming the insurance contract was not ambiguous, the trial court erred on a question of law in interpreting the contract as containing a valid aviation exclusion rider."

█   Plaintiff's first contention has been subdivided into two parts, A and B.   Under A she says: "The insurance contract prepared and issued by the defendant company was ambiguous and susceptible of two interpretations."   With this contention, we cannot agree.   The plaintiff endeavors to construe the language of the application in a manner which we do not deem permissible.   In one instance the language of the complete sentence is "Aviation exclusion rider desired."   We can see nothing ambiguous or uncertain about such provision.   This is what was issued by the company.

Under subdivision B of plaintiff's first contention it is asserted that "Ambiguous contracts susceptible of two interpretations raise mixed questions of law and fact for the jury."   It is unnecessary for us to give consideration to this contention for the reason that we have already held that this application is not subject to two interpretations.

In the second contention advanced by plaintiff, she avers that after proof of the insurance contract, payment of premiums, etc. that the burden shifts to the defendant to prove the defense urged, which she contends defendant failed to do, and that therefore the demurrer to the evidence should not have been sustained.

While this is the general rule, there is a reason why this contention cannot be sustained here.   The cause of death was not in dispute.   In the stipulations entered at pre-trial, the following appears:

"* * * that he died as a result of an airplane accident, of which he was the pilot."

And again plaintiff testified:

"* * * he was killed in an airplane crash in San Diego * * *"

\*     \*     \*     \*     \*     \*

"Q   And at the time he met his death, what type of plane was he piloting, do you know?

"A   He was in training AD 6's, I believe they were called.

"Q   Was he alone?

"A   Yes."

So the evidence clearly set up the defense, and, of course, the reason for the rule disappears when the plaintiff's own evidence establishes the defense.

█   The situation is analogous to a defense of limitation.   This is an affirmative defense, but if the plaintiff's evidence establishes that the claim is barred, it is subject to demurrer.   As said in Bradford v. Brown et al., 12 Okl. 333, 71 P. 655:

"In such a case, notwithstanding the burden is on the defendant, if the plaintiff introduces a note in evidence which shows upon its face that the action is barred by the statute of limitations, held, that the defendant may rest his case on the evidence introduced by the plaintiff, and judgment, should be rendered in accordance with the evidence."

We are convinced and hold the same to be true here.

The third and last contention of the plaintiff, supra, necessitates an analysis of what constitutes the insurance contract. A contract of insurance is consummated by an unconditional acceptance of the application. See 29 Am.Jur., Sec. 199, pg. 589, wherein it is said:

"* * * As a general rule and apart from express stipulations to a contrary effect, a contract of insurance is consummated by and not until the unconditional acceptance of the application or proposal for such insurance, and this is the rule even though the application or proposal is accompanied by the payment of the premium. * * *"

Here there was a policy of insurance issued and delivered in accordance with the application which was attached. The contract of insurance was therefore complete under the great weight of authority. But if an acceptance by the insured was necessary, we believe and hold that the receipt and retention of the policy by the insured and payment of premiums for a period of more than twenty months without complaint constituted an acceptance.

The headnote on page 1068, 44 C.J.S. Insurance § 265b, reads:

"The acceptance of an insurance policy must be unconditional, but it need not be by formal act. Reception and retention of the policy without objection beyond a reasonable time may be deemed to be an acceptance."

Retention of policy for over a five weeks' period was held sufficient in Mowles v. Boston Ins. Co., 226 Mass. 426, 115 N.E. 666; two months in People's Savings Bank v. Raines, 175 Ark. 1155, 2 S.W.2d 20; and five months in State Distributing Corporation v. Travelers Indemnity Co., 224 N.C. 370, 30 S.E.2d 377. Not only was there a retention of the policy for twenty-two months without complaint, but insured paid all subsequent premiums even after the specific provision had been called to his attention by letter.

Judgment affirmed.